1

2

3

4

5

6          UNITED STATES DISTRICT COURT
        WESTERN DISTRICT OF WASHINGTON
7                  AT SEATTLE

8  ROBERT JOSEPH LUMPKIN,

9                        Plaintiff,          Case No. C18-330-RSM-JPD

10          v.

                                             REPORT AND RECOMMENDATION
11  DEPUTY SALT, et al.,

12                        Defendants.

13

14          INTRODUCTION AND SUMMARY CONCLUSION

15          This is a civil rights action proceeding under 42 U.S.C. § 1983.  Plaintiff Robert Lumpkin

16  is a state prisoner who is currently confined at the Clallam Bay Corrections Center in Clallam

17  Bay, Washington.  Plaintiff's civil rights claims arise out of an incident that occurred while he

18  was being booked into the Snohomish County Jail in January 2018.  Specifically, plaintiff alleges

19  that corrections officers cut off all of his clothing in the middle of the booking day room where

20  other inmates and female staff could see him.  Plaintiff claims that removing his clothing in a

21  public area of the jail constituted sexual harassment and deliberate indifference, and that it

22  violated his privacy rights.  Plaintiff identifies Corrections Deputies Salt, Williams and Spangler,

23

REPORT AND RECOMMENDATION - 1

and Corrections Sergeant Williams, as defendants in his complaint.  Plaintiff seeks compensation in an unspecified amount.

Defendants now move for summary judgment.  Plaintiff opposes defendants' motion. The Court, having reviewed defendants' summary judgment motion, plaintiff's response thereto, and the balance of the record, concludes that defendants' motion should be granted, and that plaintiff's complaint and this action should be dismissed with prejudice.

BACKGROUND

On January 11, 2018, plaintiff was apprehended by Edmonds Police Officer Justin Lee following a shoplifting incident at a Safeway Store in the City of Edmonds, and plaintiff was arrested after Officer Lee confirmed that plaintiff had two outstanding felony warrants for his arrest.  (*See* Dkt. 40, Ex. A at 2-3.)  Officer Lee thereafter transported plaintiff to the Snohomish County Jail to be booked on the outstanding warrants.  (*See id.*)  Prior to his arrival at the jail, Officer Lee notified jail staff that he was bringing plaintiff in for booking and that plaintiff may be combative.  (Dkt. 42, ¶ 2; Dkt. 43, ¶ 2.)  Corrections Deputy Jason Salt, and Corrections Sergeants Michael Miller and Russell Jutte, responded to the vehicle sally port to await Officer Lee's arrival.  (*See id.*)  Officer Lee arrived at the jail shortly after 3:00 p.m., and Corrections Deputies Randall Williams and Michael Abbitt joined the other officers in the sally port to assist. (*See* Dkt. 41, ¶ 2; Dkt. 42, ¶ 2; Dkt. 43, ¶ 3; Dkt. 45, ¶ 2.)

Deputy Salt and Deputy Williams assisted plaintiff out of the vehicle and escorted him towards the booking unit.  (Dkt. 43, ¶ 3; Dkt. 45, ¶ 2.)  Plaintiff was dragging his feet and jerking his head around while speaking continuously to the officers, but was otherwise not actively resisting.  (*See* Dkt. 41, ¶ 3; Dkt. 42, ¶ 3; Dkt. 43, ¶ 3; Dkt. 45, ¶ 2.)  At least some of the officers

REPORT AND RECOMMENDATION - 2

had the impression that plaintiff was under the influence of drugs at that time.  (Dkt. 42, ¶ 3; Dkt. 43, ¶ 3.)  Officer Lee advised Sergeant Miller, who was familiar with plaintiff from a prior booking, that plaintiff had previously attempted to bring illegal drugs into the jail.  (Dkt. 40, Ex. A at 3; Dkt. 42, ¶ 2.)  Given this background, and the concern that plaintiff may have drugs hidden on his person, Sergeant Miller informed deputies that plaintiff would need to be strip searched.  (Dkt. 42, ¶ 2; Dkt. 43, ¶ 3; Dkt. 45, ¶ 2.)

Once inside the facility, Deputy Salt and Deputy Williams conducted a pat search of plaintiff while he was still in handcuffs, but that search did not produce anything.  (Dkt. 43, ¶ 3; Dkt. 45, ¶ 3.)  Because plaintiff was cooperating, deputies removed his handcuffs and had him place his hands on the wall.  (*Id*.)  Deputy Williams directed plaintiff, who had on multiple layers of clothing, to remove his jackets and shirts until he got down to one shirt.  (Dkt. 45, ¶ 3.)  Plaintiff complied, and his clothing was searched for contraband before being placed into a property bin.  (*Id*.)

Once plaintiff was down to a tank top, he was moved to some nearby chairs to remove his pants, shoes and socks.  (Dkt. 43, ¶ 3.)  Plaintiff kicked off his shoes and then removed the first of his two pairs of pants, which he handed to Deputy Salt.  (*Id*., ¶ 4; Dkt. 45, ¶ 4.)  Deputy Williams then conducted another pat search which did not produce anything.  (*See id*.)  Plaintiff was next directed to remove his socks.  (*See id*.)  As plaintiff brought his left leg up and reached for his sock, Deputy Williams and Deputy Salt both saw an object in the sock.  (*See id*.)  Plaintiff made an attempt to grab the item, and Deputy Williams grabbed plaintiff's hand and yelled that plaintiff was trying to get something.  (*Id*.)  Deputy Salt grabbed plaintiff's other arm and attempted to pull what appeared to be a small baggy away from plaintiff's mouth.  (*See* Dkt. 43,

REPORT AND RECOMMENDATION - 3

1  ¶ 4; Dkt. 45, ¶ 4.)  At that point, officers took plaintiff to the ground in an effort to prevent him

2  from swallowing the baggy and its contents.  (*See id*.)

3    Once on the ground, plaintiff continued to struggle and tucked his arms under his body

4  while still trying to get his hands up to his mouth in an apparent attempt to swallow the baggy.

5  (*See* Dkt. 42, ¶ 5; Dkt. 43, ¶ 4.)  Deputy Salt was finally able to dislodge the baggy from

6  plaintiff's grasp.  (*Id*.)  Plaintiff, however, continued to struggle and, when he ignored repeated

7  commands to stop resisting, Deputy Williams applied his taser in drive stun mode to plaintiff's

8  right buttock.  (Dkt. 45, ¶ 5.)  Deputies were finally able to place plaintiff in handcuffs and ankle

9  restraints.  (*See* Dkt. 42, ¶ 6; Dkt. 43, ¶ 4; Dkt. 45, ¶ 5.)  However, plaintiff still continued to

10  struggle with corrections staff, and he made comments to the effect that he had "other stuff" and

11  that they wouldn't find it.  (Dkt. 42, ¶ 6; Dkt. 45, ¶ 5.)

12    Because of plaintiff's refusal to cooperate, and uncertainty as to whether plaintiff was

13  concealing any additional contraband or weapons on his person, Deputy Williams cut plaintiff's

14  last pair of pants off of him with a pair of scissors while plaintiff was still pinned to the floor in

15  the common area of the booking unit.  (Dkt. 42, ¶ 6; Dkt. 43 ¶ 5; Dkt. 45, ¶ 6.)  Deputy Williams

16  left plaintiff in his tank top and boxer shorts and, after officers assisted plaintiff to his feet, they

17  escorted him into a booking cell.  (Dkt. 42, ¶ 7; Dkt. 43, ¶¶ 5, 6; Dkt. 45, ¶¶ 6, 7.)

18    Once in the booking cell, Deputy Williams cut off plaintiff's remaining clothing and

19  conducted a modified strip search to ensure plaintiff did not have any more contraband on his

20  person.[1]  (Dkt. 42, ¶ 7; Dkt. 45, ¶ 7.)  A modified strip search involves placing an inmate on the

---

[1] In a handwritten note on a document attached to plaintiff's complaint, plaintiff appears to assert that all of his clothing, including his boxer shorts, was cut off in the common area of the booking unit rather than in a cell. (*See* Dkt. 7 at 7.)  Plaintiff retreats from this position in his response to defendants' summary judgment motion wherein plaintiff acknowledges that all of his clothing *except* his underwear was removed in the main area of the

REPORT AND RECOMMENDATION - 4

1    floor and rolling him onto his side to visually inspect for contraband.  (Dkt. 42, ¶ 7; Dkt. 45, ¶ 7.)

2    Deputy Williams found no additional contraband during the strip search.  (Dkt. 45, ¶ 7.)

3    Plaintiff was thereafter moved to a restraint chair inside the cell and covered with a safety

4    blanket.  (*Id*.; Dkt. 42, ¶ 8.)  Medical staff were called to complete a restraint chair assessment to

5    ensure that the straps were not too tight, that plaintiff's circulation and breathing were

6    unrestricted, and that plaintiff was not injured.  (*See id*.)  Medical staff confirmed that plaintiff

7    was not injured and that the restraints had been properly applied.  (Dkt. 42, ¶ 8.)

8        Plaintiff filed his complaint in this action on March 5, 2018.  (*See* Dkts. 1-1, 7.)

9    Plaintiff's complaint does not contain any allegations of excessive force, nor does plaintiff seek

10   to challenge the strip search.  (*See* Dkt. 7 at 3, 7.)  The sole focus of plaintiff's complaint is the

11   removal of his clothing in a common area of the booking unit rather than in a more private side

12   cell.  (*See id*.)  Plaintiff alleges that the removal of his clothing in a public area of the jail

13   constituted sexual harassment and deliberate indifference, and that it violated his privacy rights.[2]

14   (*Id*. at 3.)

15       Defendants argue that summary judgment in their favor is warranted because plaintiff has

16   not established any violation of a federal constitutional right.  (*See* Dkt. 39 at 12-19.)  They

17   further argue that plaintiff should be assessed a strike under 28 U.S.C. § 1915(g) because this

18   action is "plainly frivolous."  (Dkt. 39 at 19.)

19

20   booking room, and that his remaining clothing was removed in a privacy cell.  (*See* Dkt. 47 at 4.)  Plaintiff
     maintains, however, that *all* of his clothing should have been removed in the privacy cell and not in the main area of
     the booking room where other inmates and officers could see him.  (*Id*.)

21       [2] In his response to defendants' summary judgment motion, plaintiff does appear to assert a claim of
     excessive force based on defendants allegedly "attacking plaintiff with scissors," but no such claim appears in his
22   complaint.  (Dkt. 47 at 3.)  Plaintiff also asserts in his response a due process claim based on defendants' failure to
     remove his jeans in a private area but, again, no such claim appears in his complaint.  (*Id*. at 4.)  The Court will not
     address these claims as they were not properly presented in the first instance.
23

REPORT AND RECOMMENDATION - 5

DISCUSSION

Summary Judgment Standard

Summary judgment is appropriate when a "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of his case with respect to which he has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of showing the district court "that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325. The moving party can carry its initial burden by producing affirmative evidence that negates an essential element of the nonmovant's case, or by establishing that the nonmovant lacks the quantum of evidence needed to satisfy its burden of persuasion at trial. *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc*., 210 F.3d 1099, 1102 (9th Cir. 2000). The burden then shifts to the nonmoving party to establish a genuine issue of material fact. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court must draw all reasonable inferences in favor of the nonmoving party. *Id.* at 585-87.

In supporting a factual position, a party must "cit[e] to particular parts of materials in the record . . .; or show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 585. "[T]he requirement is that there be no *genuine* issue of material fact. . . . Only disputes over facts that might affect the outcome of the suit under the governing law will properly

REPORT AND RECOMMENDATION - 6

preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).  The central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251-52.

The opposing party must present significant and probative evidence to support its claim or defense.  *Intel Corp. v. Hartford Accident & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991). "The mere existence of a scintilla of evidence in support of the non-moving party's position is not sufficient[]" to defeat summary judgment.  *Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995).  Nor can the nonmoving party "defeat summary judgment with allegations in the complaint, or with unsupported conjecture or conclusory statements." *Hernandez v. Spacelabs Med. Inc*., 343 F.3d 1107, 1112 (9th Cir. 2003).

<u>Section 1983 Standard</u>

In order to sustain a cause of action under 42 U.S.C. § 1983, a plaintiff must show (i) that he suffered a violation of rights protected by the Constitution or created by federal statute, and (ii) that the violation was proximately caused by a person acting under color of state law.  *See Crumpton v. Gates*, 947 F.2d 1418, 1420 (9th Cir. 1991).  The causation requirement of § 1983 is satisfied only if a plaintiff demonstrates that a defendant did an affirmative act, participated in another's affirmative act, or omitted to perform an act which he was legally required to do that caused the deprivation complained of.  *Arnold v. IBM*, 637 F.2d 1350, 1355 (9th Cir. 1981) (citing *Johnson v. Duffy*, 588 F.2d 740, 743-44 (9th Cir. 1978)).

REPORT AND RECOMMENDATION - 7

1

<u>Eighth Amendment</u>

2      Plaintiff claims that the removal of his clothing in a public area of the jail constituted

3 sexual harassment and deliberate indifference.  These claims implicate plaintiff's rights under the

4 Eighth Amendment which protects prisoners from cruel and unusual punishment.[3]

5      1.     <u>Sexual Harassment</u>

6      Sexual harassment or abuse of a prisoner by a corrections officer can constitute an Eighth

7 Amendment violation.  *Wood v. Beauclair*, 692 F.3d 1041, 1046 (9th Cir. 2012).  In order to

8 establish an Eighth Amendment violation, a prisoner must show that prison officials acted with a

9 "sufficiently culpable state of mind," and that the conduct complained of was objectively

10 "harmful enough" to establish a constitutional violation.  *Hudson v. McMillian*, 503 U.S. 1, 8

11 (1992).  The objective component of an Eighth Amendment claim is "contextual and responsive

12 to 'contemporary standards of decency.'"  *Id*. (quoting *Estelle v. Gamble*, 429 U.S. 97, 103

13 (1976)).  In the context of a sexual harassment claim, the principal inquiry in determining

14 whether a constitutional violation has occurred is whether the contact is incidental to legitimate

15 official duties such as a justifiable pat frisk or strip search or, rather, is undertaken to arouse or

16 gratify the officer or humiliate the inmate.  *Crawford v. Cuomo*, 796 F.3d 252, 257-58 (2nd Cir.

17 2015).

18      Plaintiff does not assert in his complaint that any of the officers involved in the incident

19 in question touched him in a sexual fashion or acted with an intent to gratify their sexual desires.

20 (*See* Dkt. 7.)  Rather, plaintiff asserts that it was humiliating and embarrassing to have officers

21      ⸻⸻⸻⸻⸻
        [3]  At the time of the incident in question here, plaintiff was apparently being booked into jail based on a
22 violation of the terms of his community custody.  (*See* Dkt. 40.)  Plaintiff is therefore properly deemed a convicted
   prisoner rather than a pretrial detainee for purposes of this action and, thus, Eighth Amendment standards apply to
23 plaintiff's sexual harassment and deliberate indifference claims.

REPORT AND RECOMMENDATION - 8

1  remove his clothing in a public area.  (Dkt. 7 at 3.)  The Court first notes that, contrary to the

2  allegations in the complaint, officers did not remove *all* of plaintiff's clothing in the booking

3  area, only his outer layers of clothing.  Plaintiff remained in his boxer shorts and a tank top until

4  he was taken to a private room to be strip searched.  Plaintiff maintains that his jeans, which

5  were cut off by officers as he lay on the floor of the booking area, should have been removed in a

6  private area as well.  However, the evidence in the record, which includes video surveillance

7  footage of the incident, demonstrates that safety concerns militated against such an approach.

8          The record makes clear that the removal of plaintiff's jeans in the booking area was

9  necessitated by officers' concerns that plaintiff may have weapons or other contraband on his

10  person, and by plaintiff's refusal to cooperate with officers.  Officers had already located

11  contraband on plaintiff's person, and plaintiff resisted officers' efforts to retrieve that

12  contraband.  In addition, plaintiff made comments suggesting that he may have additional

13  contraband on his person, he refused to comply with officers' directives that he stop struggling,

14  and he indicated he was not going to comply with a strip search.  Under these circumstances, it

15  was reasonable for officers to cut plaintiff's jeans off because removing them in the normal

16  fashion would have necessitated removing plaintiff's leg restraints which, in turn, would have

17  exposed corrections staff to possible injury given plaintiff's active resistance.

18          The record is devoid of any evidence that defendants acted with any intent to harm or

19  embarrass plaintiff.  The evidence instead demonstrates that defendants acted to ensure the safety

20  of jail staff given plaintiff's obstructive conduct, and to ensure the safety of the institution by

21  ensuring that contraband was not introduced into the facility, both of which constitute legitimate

22  correctional goals.  Accordingly, plaintiff's sexual harassment claim fails.

23

REPORT AND RECOMMENDATION - 9

2.    <u>Deliberate Indifference</u>

Plaintiff's deliberate indifference claim lacks clarity but, to the extent it can be deemed separate from plaintiff's sexual harassment claim, it nonetheless implicates the same Eighth Amendment concerns.  The treatment that a prisoner receives in prison, and the conditions under which he is confined, are subject to scrutiny under the Eighth Amendment.  *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (citing *Helling v. McKinney*, 509 U.S. 25, 31 (1993)).  The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement. *Id*.  This duty includes ensuring that inmates receive adequate food, clothing, shelter, and medical care, and taking reasonable measures to guarantee the safety of inmates.  *Id*.

As noted above, in order to establish an Eighth Amendment violation, a prisoner must satisfy a two-part test containing both an objective and a subjective component.  The Eighth Amendment standard requires proof that (1) the alleged wrongdoing was objectively "harmful enough" to establish a constitutional violation; and (2) the prison official acted with a sufficiently culpable state of mind.  *Id*. at 834.  The state of mind requirement under the subjective component of the Eighth Amendment standard has been defined as "deliberate indifference" to an inmate's health or safety.  *Id*.  Under the "deliberate indifference" standard, a prison official cannot be found liable for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety.  *Id*. at 837.

Plaintiff offers no evidence that defendants disregarded any risk to his health or safety when they used scissors to cut off his jeans in the common area of the booking unit.  The evidence in the record demonstrates that defendants' actions in their entirety were undertaken to prevent plaintiff from ingesting what they believed to be harmful contraband, to gain control of

REPORT AND RECOMMENDATION - 10

1    plaintiff when he began to struggle with them, and to prevent any additional contraband from

2    entering the institution.  Plaintiff suffered no apparent harm as a result of officers cutting of his

3    jeans save for the embarrassment which was addressed above.  Plaintiff's deliberate indifference

4    claim therefore fails as well.

5        In sum, plaintiff has not demonstrated any violation of his Eighth Amendment rights

6    arising out of the removal of his outer clothing in the common area of the booking unit at the

7    Snohomish County Jail in January 2018.  Accordingly, defendants are entitled to summary

8    judgment with respect to plaintiff's sexual harassment and deliberate indifference claims.

9                                    Fourth Amendment

10       Plaintiff also claims that his privacy rights were violated when corrections staff removed

11   his clothing in a public area of the jail.  (Dkt. 7 at 3.)  The Fourth Amendment guarantees "[t]he

12   right of the people to be secure in their persons ... against unreasonable searches...." U.S. Const.

13   art IV.  In *Hudson v. Palmer*, 468 U.S. 517, 526 (1984), the Supreme Court held that "society is

14   not prepared to recognize as legitimate any subjective expectation of privacy that a prisoner

15   might have in his prison cell and that, accordingly, the Fourth Amendment proscription against

16   unreasonable searches does not apply within the confines of the prison cell."  The Ninth Circuit

17   has nevertheless recognized that prisoners do retain limited rights to bodily privacy under the

18   Fourth Amendment.  *Michenfelder v. Sumner*, 860 F.2d 328, 333–34 (9th Cir.1988) ("We

19   recognize that incarcerated prisoners retain a limited right to bodily privacy.").  However, the

20   Ninth Circuit "has never held that the Constitution is violated by the mere fact of a prison official

21   viewing the unclothed body of an inmate of the opposite sex."  *See Somers v. Thurman*, 109 F.3d

22   614, 620 (9th Cir. 1997).

23

REPORT AND RECOMMENDATION - 11

1    Despite plaintiff's expressed concerns about being exposed to other inmates without

2    clothing, the videotape footage of the incident appears to show that plaintiff was the only inmate

3    in the common area of the booking room at the time his outer clothing was removed.  (*See* Dkt.

4    35.)  To the extent plaintiff complains that he may have been seen by female corrections staff

5    while in a semi-clothed state, it is clear that he has not stated any claim implicating federal

6    constitutional concerns.  Accordingly, defendants are entitled to summary judgment with respect

7    to plaintiff's Fourth Amendment claim as well.

8                                    Request for Issuance of Strike

9    Defendants also request in their motion for summary judgment that the Court assess

10   plaintiff a "strike" under 28 U.S.C. § 1915(g) on the grounds that the instant action is frivolous.

11   (*See* Dkt. 39 at 10.)  The Ninth Circuit has defined a "frivolous" case as one "of little weight or

12   importance: having no basis in law or fact."  *Andrews v. King*, 398 F.3d 1113, 1121 (9th Cir.

13   2005) (citations omitted).  The Court generally disfavors the practice of defendants requesting in

14   a motion for summary judgment that a strike be assessed.  However, the Court agrees that

15   assessment of a strike is appropriate in this instance.  While plaintiff's complaint appeared on its

16   face to present potentially viable constitutional claims for relief, the version of events set forth in

17   the complaint is flatly contradicted by evidence in the record, including the video surveillance

18   footage.  This Court concurs that this action is frivolous and therefore recommends that the

19   dismissal of this action count as a strike under § 1915(g).

20                                          CONCLUSION

21   Based on the foregoing, this Court recommends that summary judgment be granted in

22   favor of defendants and that plaintiff's complaint and this action be dismissed with prejudice.

23

REPORT AND RECOMMENDATION - 12

This Court further recommends that a strike be assessed under § 1915(g).  A proposed order accompanies this Report and Recommendation.

Objections to this Report and Recommendation, if any, should be filed with the Clerk and served upon all parties to this suit by no later than February 7, 2019.  Failure to file objections within the specified time may affect your right to appeal.  Objections should be noted for consideration on the District Judge's motion calendar for the third Friday after they are filed. Responses to objections may be filed within **fourteen (14)** days after service of objections.  If no timely objections are filed, the matter will be ready for consideration by the District Judge on **February 8, 2019.**

This Report and Recommendation is not an appealable order.  Thus, a notice of appeal seeking review in the Court of Appeals for the Ninth Circuit should not be filed until the assigned District Judge acts on this Report and Recommendation.

DATED this 16th day of January, 2019.


James P. Donohue
_____
JAMES P. DONOHUE
United States Magistrate Judge

REPORT AND RECOMMENDATION - 13